The next case of the afternoon is Navistar Financial v. Capitol Ready Mix for the appellant, Mr. Randall, for the appellee, Mr. Carter. You may proceed. And please, the court, counsel, as the court indicated, I represent Capitol Ready Mix, one of a number of defendants who are named in this case, but only one wherein the issues actually were joined by the defendant in the plaintiff's complaint. Basically, the principal error we want to assert, because it is the combination error of granting a motion for summary judgment for the plaintiff and denying a motion for summary judgment filed by the defendant, predicated on two written documents, which I believe on their face established as a matter of law that they did not give rise to a judgment against this defendant. The first one was what's titled an interlocutory guarantee agreement. Now, right now I'm not going to touch on the question of facts which relate to this, but taking that document on its face, that's the first document, and then a series of documents that were entered into on a form provided by the plaintiff, Navistar, defining the terms of loans that were being made by Navistar to certain borrowers. Now, the alleged interlocutory guarantee agreement was executed April 26th of 05. The first actual agreed obligation between Navistar and the actual borrower, if you will, was borrowing money, purchase money to purchase truck tractors. It didn't occur for two and a half months later. Now, the actual loan and the obligations of repayment, interest, timing, and all that thing were set out in the, and I'm going to refer to them as the CLSA form agreements. These were the loan documents. There was no loan, there was nothing, no obligation until those documents were executed. Now, each of those documents provided in a box, an outline box right above the signature lines, that borrower has read and agrees to all the terms and provisions, agrees that the agreement contains the entire agreement between the borrower and the lender relating to this loan, and supersedes all previous agreements except as to agreements between the borrower and the lender. In essence, then, other than agreements between a designated borrower and the lender, any other agreements related to these loans, previous agreements, were superseded. Now, the only borrower designated on this agreement, or referenced on any of these eight purchase loan agreements, was the actual borrower, the person who was purchasing vehicles with the purchase money loans, in a corporation called Curry Ice and Coal, which was a trucking business. There was no reference anywhere to Capital Ready Mix, to the Interlocutory Guarantee, any of the other parties referenced on there, nothing. The only borrower, and therefore the only agreement, prior agreement that was not superseded, was as between Curry Ice and Coal and the lender. Now, in addition... What does this have to do with anything? Capital signed an agreement that says, hey, we expressly acknowledge that this guarantee will apply not only to agreements entered as of this date, but as to any other agreements, all amendments. And that was Nevastar and Capital. Well, and now we have this Curry's default, so what about that? Because the agreement giving rise to any obligation by anybody, specifically provides that it supersedes that agreement or any other agreement. Other than that, identified as a borrower, and there was only one borrower identified. Now, following up on the court's question, that provision is consistent with both of these form agreements, reference being governed by Illinois law. And on the issue of whether a guarantee exists in the first instance, whether a guarantee agreement exists in the first instance, is this court's opinion in Williams' national lease. It was a 95 opinion. Does that opinion address a continuing guarantee? No, Your Honor. Isn't that a big difference, counsel? Well... What doesn't a continuing guarantee mean loans made after this point? Otherwise, why is this continuing? Well, and I think this is the distinction, Your Honor. As I read Williams' national lease case, it says that for there to be a guarantee, for a guarantee agreement to exist, there must be an agreement giving rise to an obligation that that's guaranteed. In other words, and the significance of a continuing guarantee is that a continuing guarantee guarantees that necessary underlying obligation as well as future obligations. The distinction being a continuing guarantee is... So in 2005, wasn't the interlocking guarantee between Avistar and Capital, agreed to be a guarantor for any then existing or future debt Curry would owe to Avistar? Yes, sir. Well, then... That's the language. Well, I don't know what that means. Isn't that what the judge... That's the language. Well, of course it's the language. Well, that was the language of the guarantee signed by the wife in Williams' national lease. Well, no, but we're talking about this is for future. This is a continuing guarantee. This is something that means for the future, then existing or future debt. And I don't understand. Thereafter, Curry incurs debt. Avistar wants it. They don't pay. What am I missing here? Why isn't Capital responsible? Well... Are they in disagreement? Well, again, under the national lease opinion, what I believe the court said is if you don't have... That wasn't a continuing guarantee, counsel. That was for stuff done as of that date in the national lease case, wasn't it? There was no perspective aspect to that case, was there? There wasn't any guarantee, your honor. There wasn't what? There wasn't any underlying obligation when the guarantee was signed. Right. We understand that was the holding that they didn't have, you know, what would be sufficient to even call it a guarantee. They hadn't worked out the terms. But I think the question is did that deal with a continuing guarantee, a guarantee prospectively of future indebtedness? Well, it did by definition because there wasn't one. By virtue of signing any document to guarantee at that point in time with no underlying agreement to be guaranteed, it had to have been a future guarantee. If we do not agree with you that the Williams national lease case has anything to do with it, and we believe it to be distinguishable and inapplicable, do you lose? No, your honor. Do you have something else you can argue about this continuing loan agreement? The language of the agreement. The underlying document that created the obligation in the first instance expressly, and that's consistent, by the way, with the national lease holding, specifically provided that unless any other prior agreement, that party was named as a borrower. I don't understand what you just said. Say it again. The language of Navistar's document. This is the August, or excuse me, the April 2005 document, the interlocking guarantee? No, sir. This is every one of the actual loan documents. I think they're referred to in the brief as CLSA agreements. Okay, so the ones with Curry? Eisencolt. Curry-Eisencolt, okay. The only designated borrower. Yes. Okay, and that agreement, right above the signature line, and by the way, this agreement provided by the lender advised the borrower, and it was what the borrower. Was Navistar part of that agreement with Curry later that Curry didn't pay? Yes, Your Honor, it was their agreement. Was capital involved in it? No, sir. So capital in April 2005, and Navistar entered into this interlocutory guarantee where capital says they're a guarantor for then any existing or future debt that the signatories, including Curry, will owe to Navistar. And subsequently, Curry borrows money and doesn't pay, and your position is capital doesn't owe Navistar? Yes, Your Honor. Because? You pause. Why is that again? Because why? Because the document creating the debt. Between Curry and Navistar. Right. Governing Curry's election to borrow their funds from Navistar provides that it superseded any prior agreement other than between the lender, Navistar, and the borrower. And the only borrower designated was Curry Ice and Coal. So you're saying capital should have been designated to borrow if they wanted to borrow? Yes, or referenced in some way. So that would have made a big difference. Capital then would be on the hook. But since they were referenced in the Curry-Navistar later loan documents, they owe nothing. Well, because the loan documents. Is that your position? Exactly, Your Honor. Because the loan documents that are purportedly guaranteed govern the transaction. And it provided that that document superseded any other document other than between the lender and the designated borrower. So you think Navistar entered into that, then the agreement is somehow with Navistar is to release capital from any obligation it might have had under the April 2005 document? Unless they designated it. Why would they do that? Because they borrowed. Why would they do that? Well, I think. Why would Navistar, when they're. . . I'm loaning you money, Curry, Coal, Oil, I guess, right? Ice and Coal. Ice and Coal. Okay, I'm loaning you this money, Curry. And, by the way, capital's on the hook for any money I loan you. But I'm now providing in this that this loan agreement for, what, hundreds of thousands of dollars, I'm excusing capital from what otherwise would be their obligation. That's your position, isn't it? Yes. Why would they do that? Well, because we never got beyond that. The simple reason why they would do that. And the issue isn't why they put in the supersedence provision itself. The issue is why they didn't designate or reference these other parties. . . Okay, I'll change my question. Why did they do that and not put in capital in the agreement? Well, because we're looking at the face of the document. We have to speculate to a degree. But the simple reason I would offer is that was why Curry, the trucking company, elected to borrow their money from Navistar. I don't understand the answer. All these companies are separate, but they're interrelated in some way. So Curry was putting one over on Navistar, they were borrowing this money, figuring we don't have to pay it back, and capital with whom we are interconnected is not going to be on the hook? Well, again, Your Honor, I think you're attributing a . . . Well, I'm trying to be clear about this, Counsel. Is that what happened? I'm disagreeing with put one over. You're disagreeing with what? With the term put one over. Well . . . They relied . . . Their motive was that they can borrow this money, Curry could, without any consequence to them if they don't pay it and they go BK, let's say, or to capital with whom they're interlocked because Navistar didn't check some box or do something that they should have done? Is that your position? It was Navistar's agreement, Your Honor. I guess, is that a yes? Yes. That's your position? Yes. Okay. So this was an oversight. Had Navistar checked the box or included capital as part of it, we wouldn't be here because capital would owe the money. Well, no, Your Honor, because I think there are a number of factual issues underlying that, but . . . But that's your primary one, isn't it? But taking it on its face, how can there be factual issues when you wanted summary judgment? You both wanted summary judgment and one side prevailed. What factual issues remain? The factual issue was whether or not the guarantee agreement was actually executed by capital readyments. Well, then why did you . . . why isn't that the basis for summary judgment? I believe we were entitled to summary judgment for the reasons we were just discussing. And if I could follow that up, the logical explanation, okay, I am handed a document and the document says, this document, which governs the loan I'm about to secure, this document says that it supersedes everything else but people named as borrower, me. So based on that, I am going to sign it. It's their document. It's their supersedence language. Because without it, what does it mean? There's already a . . . How about supersedes any prior agreement between Curry and Navistar? How about that? It's a form, Your Honor. I don't know how that's responsive to my question about why wouldn't it mean it supersedes any document between Navistar and Curry. Yes, certainly they could have customized it. Well, why would it mean to supersede any document ever between some other party who was not a signatory to this document? Isn't that particularly strange? To establish who was responsible for paying back this loan. So it was an exoneration of someone otherwise responsible for hundreds of thousands of dollars who was not mentioned, namely capital. By Navistar's choice, Your Honor. So that's what the parties agreed to. That's how the trial court should have interpreted this document. I can only say, Your Honor, that that's exactly what the document says. Okay. And what you're not saying, because you're a gentleman, is that Navistar is just stupid. Or it was an egregious oversight. Or that was the only way they would borrow the money to buy the truck, Your Honor. Well, why does Navistar care about that? Navistar doesn't. The borrower did. Well, but Navistar lets them off the hook. They didn't let the borrower off the hook. Well, but capital would otherwise have been responsible had they, according to your theory, capital been mentioned in this supposedly superseding document. Well, again, capital... The problem I have, and I guess it's my fault in communicating this, this is a form that was prepared by Navistar. A generic form, not subject to this agreement, wherein they made it clear to the borrower, or anybody else who was going to be liable for this loan, that only... I mean, they added this provision. This was not one of your basic consolidation agreements. This was in addition to the language of the consolidation agreement, where it says all prior agreements, except the agreements between the borrower, named borrower, and Navistar, are superseded. Now, essentially, the argument in defense is that, well, we didn't mean what our document says. Because in this case, we had this guarantee. What if that contract, or that borrowing, that note, what if it advantaged capital in some way, if the earlier agreement hadn't been superseded? Would capital then argue that... They lose the advantage. Because it superseded our earlier agreements. We didn't even know you guys were doing this. Well, there was no advantage. Well, but what if... I mean, we're dealing in, well, what if, and who not. To the extent that advantage was intended to be created by the transaction defined by the sales agreement, yes, they would lose that too. Well, but the advantage was created by the earlier agreement, the interlocking guarantee agreement. That was the advantage that they wanted to take advantage of, or the advantage they wanted to be the beneficiary of. But because this document, which they didn't know anything about, that would be superseded. Well... Because this document supersedes anything we've ever said in the past, unless it involves us, the two people we're talking about. To the extent the advantage was created by the sales agreement, by the loan agreement. I didn't say by the sales agreement. I said an advantage to capital based on the first agreement, the guarantee between Navistar and capital. There is some advantage to capital. That advantage is now extinguished by this later agreement with coal and ice, or ice and coal, under your theory, because of that language. It supersedes anything that we've ever done,  Yes. Well, how does a document like that supersede other agreements that exist out there in the business world? Because it purported to be a guarantee. So there had to be something that was guaranteed. And the only thing that's guaranteed is the loan, and if the loan itself says... A future loan. A future loan, and if the future loan itself says, this supersedes the other stuff we've talked about, then the guarantee doesn't exist. Right. Because the guarantee did not obligate Navistar to do anything for Curry or anyone else. It didn't obligate Navistar to do anything for anybody. The issue was, if we do it... If we do it, you'll be on the hook. Capital. I mean, that was the original idea, apparently. Unless, down the road... See, the difficulty here is it's done in the face of documents. This document and this provision in it allowed a neutral agreement, if you will. So as they're negotiating terms and what have you, to the extent that they're going to avoid the supersedence provision, they just have to name them as borrowers. Or at least reference them as borrowers. The difficulty here is having supersedence language in there, which any true borrower, the person who was borrowing the money from them as opposed to anybody else, the belief that the guarantee, the prior guarantee, or the document, if you will, would no longer be enforceable was a factor. Now, if it was, and again, this is Navistar's document, all they had to do was name any or all of these people as borrowers. The time has expired. We'll hear from you on rebuttal, and we'll cogitate. Thank you. May it please the Court, my name is Kent Carter. I'm here on behalf of Navistar Financial Corporation. You mean the guys who wrote the document who are stupid or negligent? Purportedly, correct. As you will hear in my argument today, all of the clauses mean something. The language was put into these documents for a reason, and none of these documents superseded the continuing guarantee of capital. Okay, go ahead. This case presents several legal issues, really three essential parts which are easily decided and which I believe your honors have already addressed. First, are continuing guarantees enforceable in Illinois? The answer is unquestionably yes. Second, did Capital Ready Mix sign a document that was a continuing guarantee of all obligations of curry, ice, and coal to Navistar Financial? The answer is unquestionably yes. Third, although it wasn't addressed yet, can a guarantor such as Capital avoid liability under a guarantee or any negotiable instrument by claiming that it didn't read, receive, or request the entire document such as was alleged? The answer to that is absolutely not. The facts are simple, but I do want to emphasize three or four just for structure, for purposes of today. First, in March of 2005, curry, ice, and coal approached Navistar Financial concerning a series of loans for the purchase of semi-tractor trailers. Navistar agreed to loan money to curry over a series of transactions on the condition that curry's 20 related corporations execute continuing guarantees of all of those obligations. Thereafter, over the next 18 months, Navistar Financial loaned over $4.5 million to curry, ice, and coal under the terms of eight commercial loan agreements in reliance on the continuing guarantees executed by all of these related corporations of curry, ice, and coal, one of those of which is, of course, Capital Reading Mix. There was, of course, a default, a deficiency exists, and now Navistar seeks to enforce the continuing guarantee executed by Capital according to the terms of the continuing guarantee executed by Capital. With those facts in mind, I turn to the law. First, continuing guarantees are enforceable in Illinois, and by their very definition guarantee future loans, hence the term continuing. Capital's primary argument is that there couldn't have been a meeting of the minds concerning its guarantee because the loans had not yet been entered into. But, again, that ignores the very purpose and certainly the very language of the continuing guarantee that it signed. The T.H. Davidson case we cite in our brief explains a continuing guarantee, and I quote, A continuing guarantee is a contract pursuant to which a person agrees to be a secondary obligor for all future obligations of the principal obligor. Whereby the terms of the written guarantee, it appears that the parties look to a future course of dealing or a succession of credits, it is generally considered a guarantee, a continuing guarantee. That case cites to the restatement third of suretyship, which similarly says, quote, A person can agree to become a secondary obligor for subsequent obligations of another person. Such an agreement is usually called a continuing guarantee. The law absolutely allows continuing guarantees in Illinois, and there is no question that the continuing guarantee executed by Capital Ready Mix is, in fact, a continuing guarantee of all obligations of Curry, Ice, and Cole to Navistar Financial. We know that from the language of the document which must control the parties' agreement. So I'm guessing that it's your position that the loan agreement between Navistar and Curry did not somehow eliminate this obligation on Capital? Absolutely not. Well, you heard the argument such as it was that Mr. Randall made. What's your response? Yeah, absolutely. Well, first, the continuing guarantee, by its terms, guarantees all future obligations of Curry, Ice, and Cole to Navistar Financial. So when each of those eight separate loans were subsequently entered into, buying between Curry, Ice, and Cole and Navistar Financial, Capital Ready Mix had guaranteed all of those successive loans. The supersede language upon which counsel is grasping is a very simple integration clause contained in virtually every contract I'm sure this Court has ever seen. The language is that this agreement, quote, contains the entire agreement between borrower and lender relating to this loan for the purchase of the goods. It's an integration clause between Curry and Navistar related to this loan for the purchase of these goods. Understand each of these eight loans was a purchase and security agreement and loan related to the purchase of certain identified semi-tractor trailers. Some of these contracts were for two, some of them were for 25. And so each of these loans, Navistar Financial loaned money to Curry for the purchase of the goods identified in that contract. So the supersede language contained in these agreements is that the loan being signed by Curry and Navistar supersede the oral negotiations related to this loan for the purchase of these goods. These are defined terms in the agreements. There's no reference whatsoever in these loans between Curry and Navistar to the continuing guarantee. There's no reference whatsoever. So there's no intent to somehow absolve Capital of its continuing liability? Absolutely not. And to the extent that capital was going to be released from liability, then there needed to be a contract term releasing capital of liability. Please keep in mind also that the continuing guarantee under its terms could only be terminated by, quote, guarantor giving 10 days written notice thereof to Navistar Financial. There was never any written termination of these continuing guarantees. Or stated differently, there's certainly no evidence of a termination of these continuing guarantees. So the continuing guarantee guaranteed to Navistar all obligations of all loans between Curry and Navistar. There were then a series of eight loans between Curry and Navistar. Capital Ready Mix guaranteed those loans under the terms of its continuing guarantee. There is no logical argument that language, which was a simple integration clause containing related to oral discussions for the loans and the purchase of these goods, being integrated into each written loan supersedes the prior loans or the guarantee of Capital Ready Mix. There's just no language in the agreements which would possibly support that. Well, you heard Mr. Randall's argument suggesting otherwise. And when I asked why would you do that, apparently it's because your client is stupid. Yeah, it's because they didn't do that. So the question is why would they do that? And the answer is twofold. Number one, they wouldn't. And number two, they didn't. And so that's why we have contracts is that we can look at the language and we can look at the terms and we know exactly what was agreed upon. And that's where we are. Turning to the actual language of the guarantee, as I just said, continuing guarantees are, of course, enforceable in Illinois. The language is unbelievably clear that this is, in fact, a continuing guarantee. But I do want to address some of the language just for clarity. First, the very first sentence of the continuing guarantee begins, this interlocking continuing unconditional guarantee. It's a defined term as guarantee. The language of the continuing guarantee clearly applies to future obligations between Curry and Navisar Financial. And that language is, again, quoting, guarantors expressly acknowledge that this guarantee will apply not only to agreements entered into but also to any additional agreements and all amendments, additional agreements. Going further, capital guaranteed, quote, the prompt payment of all monetary obligations of any sort, which any of the guarantors, including Curry, is now or may hereafter become liable to Navisar. There's no doubt that the language of this continuing guarantee obligates Capital Ready Mix for the future loans that Curry, in fact, signed with Navisar Financial. And Your Honors absolutely highlighted the key distinction between the Williams Nation lease case. It wasn't a continuing guarantee. In fact, the Williams Nation lease case wasn't even a guarantee. And so the language there is that it was an initial application for credit. It was not a guarantee. It was certainly not a continuing guarantee. There was no reference in the Williams case to future obligations. None whatsoever. And there was no language pertaining to continuing guarantees. That fact alone distinguishes these cases. The Williams court expressly stated, and again I quote, we find the initial application for credit was not a guarantee agreement for subsequently executed lease agreements. Subsequent. That's the point. That's exactly what you addressed. And that's exactly what the distinguishing factor is between these two cases. Here Capital signed a continuing guarantee of all subsequent future obligations of Curry. There then were subsequent future obligations of Curry. Capital remains liable for those obligations. The other argument raised in the briefing is whether or not Capital can escape or avoid liability by claiming it simply didn't read the continuing guarantee. And once again, the law is abundantly clear on this. It admittedly signed the guarantee without reading, requesting, or receiving the rest of it. And so whether, but there's no evidence whatsoever of any wrongdoing by Navistar Financial. There's no misrepresentation by Navistar Financial. Does it have to be a claim of fraud or something akin to it? Absolutely. A party is, of course, bound by the documented science. It's contract 101, correct? And there are two ways essentially to disavow responsibility for the contract that you signed. One is fraud in the execution, right? But that requires some trick or deception on the part of the lender or the other party. Nothing is alleged here. Nothing remotely like that is alleged here. There's no evidence of it whatsoever. The other way to initiate a contract of that type is unilateral error. If you made a mistake, I believed it was something else and I shouldn't have signed it. But unilateral error cannot void a document unless there is some active deception by the other party. Again, nothing is alleged. The trial court absolutely noted that in its opinion. And again, quoting the, quote, nothing in the pleading alleges fraud in the formation of the various commercial loan agreements. There is simply nothing alleged which would allow them to avoid liability under the contract. There just simply is no argument that these contracts are not enforceable as they are written. The trial court correctly decided the legal issues which were presented to it, and this court should affirm those legal issues on appeal. Now, there was also the issue about the interest being asked for. Correct, Your Honor. Just address that briefly. Absolutely. There was an argument made largely in the briefs rather than the trial court whether or not the damages, there were two arguments related to proof. The first is that the damages calculation that was requested in the motion for summary judgment in the affidavit of Navistar Financial was initially inadvertently omitted from the affidavit. That was immediately corrected by Navistar Financial through subsequent pleadings. It was an inadvertent admission which was corrected, just as allowed by Supreme Court Rule 191. The second argument is that the, and I also want to note that the damage calculation by the affiant of Navistar Financial was not contested by counter affidavit. It stood uncontested. The second argument raised in that motion to strike was that the affidavit was comprised of legal conclusions. And once again, that argument, which we've just addressed, is that capital signed the agreement, but it didn't legally enter into it because of the superseding language or because it didn't read the agreement or whatever contract arguments that they made. Again, that's a legal argument that the trial court correctly addressed below. The facts in the evidence were largely uncontested. The evidence was before the trial court. The question was simply whether or not there is any legal grounds to allow capital ready mix to avoid liability under the continuing guarantee. And the trial court correctly ruled that it was not. Lastly, I will turn to the consolidated portion of the appeal, and that being the attorney's fees provision. So, after summary judgment was granted, and after a motion for reconsideration was filed, and after a motion for reconsideration was denied, Navistar Financial then filed a petition for fees and costs to be added to the judgment. This was filed after the appeal. But the trial court did not lose jurisdiction to hear the fee petition filed by Navistar. Importantly, this was not a 1202 or 1203 attack on the summary judgment order. Navistar Financial's petition for fees did not affect the issues on appeal that related to the summary judgment granting. It did not contest the trial court's order in any way. It was not directed against the judgment. It was simply a matter that the fees and costs as provided for in these contracts be added to the judgment. Mind you, if Capital Readymex would not have filed a bond to stay in enforcement of this appeal, Navistar would obviously be enforcing this judgment in the trial court right now. Its enforcement of the damages that it sustained includes not only the contract balance, but the fees and costs as provided in the contract. And so, the trial court was not divested of jurisdiction to hear the petition for fees and costs that was added to the judgment. This issue was decided by two of the cases that we cited within our briefs. And this precise issue was decided, and I quote, although it may be filed after injury of judgment, a claim for attorney's fees is not a post-trial motion within section 1202 or 1203. So, the fees were properly considered and awarded by the trial court, notwithstanding the fact that an appeal had already been filed. Think of it this way. What if a summary judgment was granted and an appeal was filed two hours later, before a petition for fees and costs could be filed? Because a petition for fees and costs would obviously include whatever was included before that time. The argument is that if they race to the courthouse to file a notice of appeal, then the trial court loses all jurisdiction over the case to enter a ward of fees or costs. That's not the law. That makes no sense, and it's not the law. For that reason, that should also be a form of appeal. Thank you, counsel. Thank you. Rebuttal? As a quick response to the last point, what the trial court was asked to do and did do was amend its judgment after the notice of appeal was filed. It amended the judgment, increasing it by $37,000, and in the order doing so, it provided that even the new amount would run at 9% judgment interest from the original judgment date that did not include that amount of money. The $37,000 was attorney fees? I believe so, Your Honor. Wasn't that an award of attorney fees? It was an award of attorney fees, except that in the summary judgment, those attorney fees were sought and the trial court elected not to award them, not to include them in the judgment, in a judgment order that it said this is a final order. So the case law just cited to us doesn't count? I don't believe it does, Your Honor, because that's not the situation that we have here. These fees were requested in the motion. And as for the race to the courthouse argument, as soon as the judge elected not to award those fees, the plaintiff was free to go in and ask for a reconsideration or point out to the judge you didn't award the fees, I asked you, and elected not to do so. At any time, including for 22 days after the motion to reconsider was unfiled. The other point in the time I have left is the court's reference to Navistar being stupid. Those were my words, not yours. Well, I don't see it being stupid in the sense that in negotiating with a potential lone customer, you can, you're free to do or not do whatever you wish to do. This was presented to Currie, Eisen, Cole, who was borrowing the money, as you're the sole borrower and every other agreement was superseded. The suggestion that this supersedence provision, which would not only be redundant, but would be absurd in the argument that's being made is that, well, this was intended just to deal with preliminary negotiations, because it specifically accepted those preliminary negotiations or anything between the named borrower and the lender. I keep asking you and you have yet to respond. Why would Navistar throw in this loan agreement, essentially an abrogation of a half million dollar obligation by capital? To get the business, Your Honor. So they want the business from Currie, but they're giving up having capital legally responsible for it, and that's worth it to them? I can only say that's what they chose to do. Well, you see, if we have, the reason I keep asking is if we have multiple ways to view this, one good guidance would be what makes sense and what would be absurd. It seems to me it would be absurd to give up a half million dollar hook on capital to get the business from Currie. And after all, if they thought Currie was so terrific, they wouldn't have signed the continuing loan agreement in the first place, would they? But again, we have no evidence to any of that. Well, we have the evidence of the documents, counsel. We see the continuing loan agreement. That's evidence that apparently somebody thought we'd better get capital and the other people on the hook, isn't it? Well, what is evidence is that they held themselves out to the borrower as this agreement would supersede everything else but this agreement between us as lender and you as borrower. They could have added or referenced any of them. And essentially this argument is that despite the fact that it was on their form and their representation that all other agreements were superseded, somehow in electing to execute these documents, Currie should have known that they didn't mean that because that would be stupid. Well, what's it to Currie? Currie got the money. They signed the agreement. It's capital that apparently was let off the hook. The difference is the very thing we're here arguing about. They had a right to protect their other entities. Thank you. We'll take the matter under advisement. Stand when you're set.